OPINION *Page 2 
{¶ 1} Plaintiff-Appellant, Stark County Job and Family Services, appeals the September 2, 2008 judgment of the Stark County Court of Common Pleas, Juvenile Division, to reverse the decision of the magistrate finding dependency and to dismiss the complaint. The following facts were adduced at the adjudicatory hearing held on July 31, 2008.
 {¶ 2} Appellees are Shane Pryor and Janelle Griffith, parents of Z.P. born on January 17, 2008. At the time of the adjudicatory hearing, Father was 21 years old and Mother was 22 years old. Prior to March 2008, the parents voluntarily placed Z.P. in the care of Mother's maternal grandfather. Wanda Pounds, a caseworker with the SCDJFS, was assigned to Z.P.'s case in March 2008 based upon concerns of domestic violence and substance abuse by the parents. Ms. Pounds met with the parents and requested the parents engage in voluntary services. Father was to receive an evaluation at Melymbrosia and follow the recommendations of the evaluation. Mother was to receive evaluations at Northeast Ohio Behavioral Health and Quest and was to follow the recommendations of the evaluations. Ms. Pounds testified that the parents were for the most part complying with the pre-adjudicatory orders.
 {¶ 3} Sondra Fronimo from Melymbrosia Associates, Inc. testified that Father came to Melymbrosia in April 2008 for an assessment and was placed in a batterer's intervention treatment group. Father had attended at least six sessions at Melymbrosia.
 {¶ 4} Aimee Thomas with Northeast Ohio Behavioral Health testified that she had completed a parenting evaluation of Mother in April 2008. She had concerns for Mother's mental health as both Mother's parents had been diagnosed with major mental *Page 3 
health disorders. She recommended that Mother participate in Goodwill parenting classes, of which Mother started in July 2008. During Mother's evaluation, Ms. Thomas testified that Mother reported one occasion of domestic violence between her and Father, but Ms. Thomas did not know when the incident occurred or if Z.P. had been present for the incident. Ms. Thomas also testified that Mother admitted to using marijuana approximately twice a month and consuming one or two beers a week. If Mother followed through with the parenting evaluation's recommendations, Ms. Thomas felt her prognosis would be favorable.
 {¶ 5} While neither the parents were employed, Ms. Pounds testified that Mother was getting her GED and Father had enrolled in classes at Stark State. When Ms. Pounds became initially involved with the parents, they had been evicted from their apartment, but at the time of the hearing, Father and Mother were residing with Father's relatives. Ms. Pounds testified that to her knowledge, Z.P. had never slept on the street or in a car, had food and clothing, and the parents utilized family in Canton to assist them with the care of Z.P.
 {¶ 6} On May 29, 2008, SCDJFS filed a complaint alleging Z.P. was a dependent and/or neglected child. Ms. Pounds testified that she filed the complaint due to the parents' unstable housing, concerns with Mother's psychological evaluation and services Mother needed. A shelter care hearing was held on the same day and the trial court found probable cause existed and ordered that Z.P. be placed in the temporary custody of her maternal grandfather with SCDJFS protective supervision.
 {¶ 7} An adjudicatory hearing was held before a magistrate on July 31, 2008. Upon the conclusion the testimony, the magistrate found Z.P. to be dependent and *Page 4 
continued the matter for disposition. In the magistrate's decision issued July 31, 2008, the magistrate determined the child to be dependent because of domestic violence in the child's presence, drug and alcohol use in the presence of the child, unstable housing, and unstable employment. Disposition was scheduled to occur on August 14, 2008, but was continued indefinitely. On August 7, 2008, the magistrate granted a motion to modify entry nunc pro tunc. In his decision, the magistrate stated the July 31, 2008 entry erroneously indicated that alcohol and drug use occurred in the child's presence. The magistrate found no evidence that those events occurred in the child's presence, but nonetheless determined the risk to the child still existed.
 {¶ 8} On August 14, 2008, Father filed an objection to the magistrate's decision finding dependency. The trial court held an objection hearing on September 2, 2008.
 {¶ 9} The trial court held by judgment entry filed September 4, 2008 that upon review of the July 31, 2008 transcript and oral arguments, SCDJFS failed to prove dependency by clear and convincing evidence. The trial court sustained Father's objection and dismissed the case.
 {¶ 10} On September 4, 2008, SCDJFS filed a motion with the trial court to stay its decision. The trial court granted the motion to stay. Father filed a motion to vacate the trial court's stay with this Court and that motion is currently pending.
 {¶ 11} SCDJFS now appeals the decision of the trial court to sustain Father's objection and dismiss the complaint.
 {¶ 12} Appellant raises one Assignment of Error:
 {¶ 13} "THE TRIAL COURT ERRED IN REVERSING THE MAGISTRATE'S ORDER FINDING THAT THE CHILD IS DEPENDENT." *Page 5 
 {¶ 14} This appeal is expedited and is being considered pursuant to App. R. 11(D).
 {¶ 15} SCDJFS filed its complaint alleging dependency pursuant to R.C. 2151.04(B) and (C). R.C. 2151.04(B) defines a dependent child as one "[w]ho lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian." R.C. 2151.04(C) defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."
 {¶ 16} As this Court recently stated in In re Pierce (Dec. 19, 2008), Muskingum App. No. CT2008-0019, 2008-Ohio-6716, a trial court's adjudication of a child as abused, neglected, or dependent must be supported by clear and convincing evidence. R.C. 2151.35. Clear and convincing evidence is that which produces "in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In Re: Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613, quoting Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118. When this court reviews an adjudication to determine whether the judgment is supported by clear and convincing evidence, we must determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing degree of proof. In Re: Christian, 4th Dist. No. 04CA10, 2004-Ohio-3146, citations omitted.
 {¶ 17} A finding of dependency under R.C. 2151.04 focuses on whether the child is receiving proper care and support. In re Walling, 1st Dist. No. C-050646, 2006-Ohio-810, ¶ 16 citing,In re Bibb (1980), 70 Ohio App.2d 117, 120, 435 N.E.2d 96. Therefore, the determination must be based on the condition or environment of the child, not the *Page 6 
fault of the parents. In re Bishop (1987), 36 Ohio App.3d 123, 124,521 N.E.2d 838; In re Birchfield (1988), 51 Ohio App.3d 148, 156,555 N.E.2d 325. That being said, a court may consider a parent's conduct insofar as it forms part of the child's environment. See In re Burrell (1979),58 Ohio St.2d 37, 39, 388 N.E.2d 738. The parent's conduct is significant if it is demonstrated to have an adverse impact on the child sufficient to warrant state intervention. Id. Upon review of the record before us in the present matter, we find SCDJFS did not present sufficient evidence to demonstrate dependency under either section of the statute.
 {¶ 18} In proving that a child is dependent under R.C. 2151.04(B), the evidence must demonstrate not only that the parent had a mental incapacity, but also that the child lacked adequate care because of the mental incapacity. In re Pierce, at ¶ 17. Ms. Thomas of Northeast Ohio Behavioral Health testified that upon her examination of Mother, she determined that Mother's parents had both been diagnosed with major mental health disorders. (T. 31). While Ms. Thomas was concerned for Mother because the disorders are genetic, she testified that Mother's testing did not indicate that Mother had these disorders. Id. Ms. Thomas stated that Mother's evaluation did not demonstrate that she is incapable of parenting, but it would take more effort for her to learn things. (T. 32). Further, Ms. Thomas testified that if Mother followed through with the recommendations, her prognosis would be favorable. (T. 34).
 {¶ 19} For a determination of dependency under R.C. 2151.04(C), the conduct of a parent is relevant only insofar as that parent's conduct forms a part of the environment of the child at issue. In reBurrell (1979), 58 Ohio St.2d 37, 29, 388 N.E.2d 738. And "[a]s a part of the child's environment such conduct is only significant if it can be *Page 7 
demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention. That impact cannot simply be left to inference, but must be specifically demonstrated in a clear and convincing manner." Id.
 {¶ 20} SCDJFS alleges a dependency finding is warranted under R.C. 2151.04(C) based upon parental conduct. Specifically, SCDJFS stated that during Mother's evaluation with Ms. Thomas, Mother admitted to an incident of domestic violence and drug and alcohol use. A review of the record shows that there was no testimony as to when those incidents occurred and if they had even occurred in the presence of the child. The record is devoid of evidence to demonstrate that Mother's drug and alcohol use had adverse impact on her supervision of the child. Further, the magistrate amended its decision on August 7, 2008 stating there was no evidence that drug or alcohol use had occurred in the presence of the child.
 {¶ 21} SCDJFS also point to the parents' lack of stable housing to support its argument for dependency under R.C. 2151.04(C). The parents had been previously evicted from their apartment, but as the record shows at the time of the hearing, the parents were residing with Father's relatives. Z.P. had been living with her grandfather since before March 2008. While the evidence of instable housing and the impact of the child can be determined by inference, the record demonstrates no clear and convincing evidence presented at the hearing how the lack of stable housing affected the child.
 {¶ 22} Further, there was no evidence presented at the hearing as to the care received by Z.P. from her grandfather. "[T]he state's interest under Section 2151.04, Revised Code, arises only if there is no one who is meeting the obligations of care, *Page 8 
support and custody, which are owed by the parent." In re Darst, 117 Ohio App. at 379, 24 O.O.2d 144, 192 N.E.2d 287. Accordingly, R.C. 2151.04(C) has no application.
 {¶ 23} Based upon the evidence presented at the July 31, 2008 adjudicatory hearing, we find the trial court did not err in sustaining Father's objection and dismissing the complaint of SCDJFS. SCDJFS failed to prove by clear and convincing evidence that Z.P. was dependent. The Assignment of Error of SCDJFS is overruled.
 {¶ 24} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By: Delaney, J. Farmer, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to Appellant. *Page 1